UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANA LYDIA RODRIGUEZ LOPEZ, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *  Civil Action No. 10-10045-JLT |
| | * |
| MICHAEL J. ASTRUE, | * |
| | * |
| Defendant. | * |

MEMORANDUM

August 26, 2011

TAURO, J.

I.  Introduction

This case arises under 42 U.S.C. §§ 405(g), as a review of a denial of disability benefits by the Social Security Administration ("SSA"). Presently at issue are Plaintiff's Motion to Reverse or Remand the Decision of the Commissioner of Social Security Administration [#9] and Defendant's Motion for Order Affirming the Decision of the Commissioner [#14]. For the following reasons, Plaintiff's Motion to Reverse is ALLOWED IN PART and DENIED IN PART and Defendant's Motion to Affirm is DENIED.

II. Background

   A.  Facts

Plaintiff, 35 years old,[1] grew up in Puerto Rico and now lives in Brockton,

---

[1] Mem. Supp. Commissioner's Position, 1 [#15] [hereinafter Def.'s Mem.]; see Tr., 28 [#17].

Massachusetts.[2] She only completed ninth grade.[3] Plaintiff has experienced significant trauma, including sexual assault, the violent death of her son's father, and violence at the hands of other boyfriends.[4] She is illiterate in English and has worked as an assembler and factory worker.[5] Plaintiff, however, has not worked since October 19, 2007.[6]

    B.    Treating Clinicians

        1.    Mental Health

In March 2004, a therapist at South Bay Mental Health center, Jody Resnick, diagnosed Plaintiff with post-traumatic stress disorder ("PTSD").[7] Ms. Resnick described Plaintiff as exhibiting, inter alia, depression, hopelessness, poor attention and concentration, and "suicidal ideation."[8] She was evaluated as having a Global Assessment of Functioning ("GAF") score of 35 on March, 25, 2004 and a GAF score of 40 in June of 2004.[9]

In 2006 and 2007, Plaintiff saw Dr. Barbara Murphy for psychopharmacological treatment

---

[2] Mem. Law. Supp. Pl.'s Mot. Reverse & Remand Decision Commissioner Social Security Administration, 2 [#10] [hereinafter Pl.'s Mem. Supp. Reverse]; see Tr., 38, 115 [#17].

[3] Pl.'s Mem. Supp. Reverse, 2 [#10]; see Tr., 478 [#17].

[4] Pl.'s Mem. Supp. Reverse, 2 [#10]; see Tr., 202–04, 212–24, 216 [#17].

[5] Def.'s Mem., 1 [#15]; see Tr., 126 [#17].

[6] Pl.'s Mem. Supp. Mot. Reverse, 1 [#10]; see Tr., 24 [#17].

[7] See Tr., 209 [#17].

[8] Tr., 201–11 [#17].

[9] A GAF score of 31 to 40 indicates "some impairment in reality testing or communication [examples omitted] or major impairment in several areas such as work or school, family relations, judgment, thinking or mood [examples omitted]." Pl.'s Mem. Supp. Mot. Reverse, 3 [#10] (alterations in original) (quoting Diagnostic and Statistical Manual of Mental Disorders, 4th Ed. (DSM-IV), at 34).

2

at the Mashpee Mental Health Center.[10] As a result of these visits, Plaintiff began taking an antidepressant and an antipsychotic.[11]

On November 1, 2007, Plaintiff began receiving mental health treatment from a psychiatrist, Dr. David Green, and a licensed social worker and therapist, Mr. Nelson Cardona, through a program at the Massachusetts Society for the Prevention of Cruelty to Children ("MSPCC").[12] The MSPCC team developed a treatment plan for Plaintiff after assessing her as having the following: recurrent and severe major depressive disorder, generalized anxiety disorder (with panic attacks), and PTSD.[13] Her GAF score at that time was recorded as 45.2.[14] Dr. Green continued to prescribe antidepressant and antipsychotic drugs.[15] After twelve therapy sessions and a series of psychiatric visits, Plaintiff's behavioral symptoms only saw "slight improvement."[16]

Plaintiff continued to be seen by the MSPCC mental health division through July 2009.[17] On July 24, 2009, Nelson Cardona completed a Mental Residual Functional Capacity Assessment for Plaintiff and rated her as having marked limitations in all categorized functional areas.[18] Her

---

[10] Tr., 129 [#17].

[11] Tr., 130, 242 [#17].

[12] Tr., 336, 337–49, 426–27, 430–46 [#17].

[13] Tr. 338, 346 [#17].

[14] Tr., 338, 346 [#17]. A GAF score between 41 and 50 denotes serious symptoms (such as suicidal ideation) and serious impairments in social, occupational, or school functioning.

[15] Tr., 349 [#17].

[16] Tr., 336–37 [#17].

[17] Tr., 426, 430–46, 455 [#17].

[18] Tr., 430–33 [#17].

overall prognosis was rated as "poor."[19] Also on July 24, 2009, Dr. Green completed a "Psychiatric Review Technique" covering 2007 to 2009.[20] His disposition was based on psychotic disorders (specifically, hallucinations and emotional withdrawal) and anxiety-related disorders.[21] Additionally, Dr. Green found that Plaintiff met the criteria for an affective disorder, had extreme functional limitations in concentration, and had "a complete inability to function independently outside the area of one's home" as a result of her anxiety disorder.[22]

    2.    <u>Physical Health</u>

Since 2001, Plaintiff claims that she has and continues to suffer from chronic back pain, which radiates down her left leg, challenging her mobility.[23] Diagnostic tests reveal a degenerative disc disease.[24] Treatment over the last ten years has included: periodic steroid injections for temporary pain relief, physical therapy, medication, rest, and heating pads.[25] Plaintiff reports that her condition has nonetheless worsened over time.

  C.    <u>Consulting Examiners</u>

    1.    <u>Ana Maria Soto, M.D.</u>

---

[19] Tr., 432 [#17].

[20] Tr., 336, 434–46 [#17].

[21] Tr., 434–46 [#17].

[22] Tr., 437, 444–45 [#17].

[23] Tr., 144, 225, 227, 329, 472 [#17].

[24] Tr., 467–78, 476 [#17].

[25] Tr., 145, 225–37, 394–95, 421–22, 457–59, 463, 481 [#17].

Dr. Soto conducted a mental health assessment of Plaintiff in 2007.[26] Dr. Soto made the following diagnoses: dysthymic disorder (with the possibility of major depressive disorder), anxiety disorder, and bulimia nervosa.[27] Dr. Soto did not rule out the possibility that Plaintiff's symptoms could have been somewhat exaggerated.[28] She did state, however, that Plaintiff's symptoms could be "very genuine" and that severe depression may have been masked by her reduced state and as a result of a language barrier.[29]

2. Theodore Stronach, Ph.D.

The SSA directed that Plaintiff be seen by Dr. Stronach in May 2007 for further mental health evaluation.[30] In his assessment, Dr. Stronach identified the relationship between Plaintiff's past trauma and its aggravation of her current psychological state.[31] He found the Plaintiff to be sincere in her responses and made the following diagnoses: PTSD, major (worsening) depression recurrent with psychotic features, and generalized anxiety disorder.[32] Finally, Dr. Stronach gave Plaintiff a GAF score of 35.[33]

3. Menachem Kasdan M.D. and S. Fischer, M.D.

---

[26] Tr., 300–04 [#17].

[27] Tr, 303 [#17].

[28] Tr., 303 [#17].

[29] Tr., 303 [#17].

[30] Tr., 212–27 [#17].

[31] See Tr., 212 [#17]; Pl.'s Mem. Supp. Mot. Reverse, Ex. 1 [#10].

[32] Tr., 216–17 [#17].

[33] Tr., 217 [#17].

Mental health reviewers, Dr. Kasdan and Dr. Fischer both accepted diagnoses of a depressive disorder and an anxiety disorder.[34] Dr. Kasdan found Plaintiff to be moderately limited in her ability to do the following: (1) maintain concentration, persistence, and pace; (2) understand, remember, and execute detailed instructions; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms; and (4) perform at a consistent pace without an unreasonable number and length of rest periods.[35]

    4.    Phyllis Sandell, M.D.

In March 2008, Dr. Sandell confirmed earlier diagnoses of recurring back pain, advising that Plaintiff could perform light work by alternating sitting and standing to relieve pain or discomfort.[36]

    5.    Cathleen Beer, Vocational Expert

Ms. Beer did not evaluate Plaintiff, nor did she review the Plaintiff's medical records. Instead, Ms. Beer responded to two hypothetical situations, posed by an Administrative Law Judge ("ALJ") on August 10, 2009. The first hypothetical involved a woman of Plaintiff's same age, education level, and physical impairments. Ms. Beer testified that, with these characteristics, an individual could be expected to work as a counter attendant, assembler of electronic accessories, loader of dies, or sealer of packages.[37]

In the second hypothetical, the ALJ included the same physical characteristics but added

---

[34] Tr., 317, 319, 379, 381 [#17].

[35] Tr., 386 [#17].

[36] Tr., 328–30 [#17].

[37] See Tr., 44–48 [#17].

limitations stated in Nelson Cardona's Mental Residual Functional Capacity Assessment ("MRFC Assessment"). Ms. Beer concluded that one's ability to understand and remember short and simple instructions are requirements of even the simplest job, and that those (hypothetical) limitations "would really preclude somebody from all work."[38]

C. Procedural History

On October 19, 2007, Plaintiff applied for Supplemental Security Income (SSI) benefits,[39] alleging disability from depression, lumbar disc disease, and dermatological conditions.[40] Plaintiff claimed a disability beginning on December 4, 2004 due to mental and physical impairments.[41] On March 20, 2008, the Social Security Administration ("SSA") denied her application.[42] On July 10, 2008, the claim was denied upon reconsideration.[43] On August 20, 2008, Plaintiff filed a Request for a Hearing before an ALJ.[44]

The ALJ, Alan McKay, held the requested hearing on August 10, 2009.[45] The ALJ concluded that although Plaintiff had severe impairments that prevented her from doing her past

---

[38] Tr., 48 [#17].

[39] See Tr., 22 [#17].

[40] Tr., 125 [#17].

[41] See Tr., 22 [#17].

[42] See Tr., 22 [#17].

[43] Tr., 22 [#17].

[44] Tr., 62 [#17].

[45] See Tr., 33 [#17]. Plaintiff was represented by her attorney at the hearing. See Tr., 33–49 [#17].

relevant work, there were other jobs that she could still do in spite of these impairments.[46]

The Decision Review Board ("DRB") selected the case for review.[47] On November 24, 2009, the DRB denied Plaintiff's requested benefits while amending the ALJ's determination of Plaintiff's residual functional capacity.[48]

On January 12, 2010, Plaintiff commenced this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c).[49]

III.   Discussion

  A.   Standard of Review

When a district court reviews a final decision of the Commissioner of Social Security ("Commissioner"), it has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a hearing," but the court may not disturb the Commissioner's findings if they are supported by "substantial evidence."[50] If supported by substantial evidence, an ALJ's findings of fact are conclusive, "even if the record arguably could justify a different conclusion."[51] Substantial evidence, however, is "more than a scintilla of evidence that a

---

[46] See Tr., 7–11, 26 [#17].

[47] See Tr., 7–11 [#17].

[48] Tr., 11 [#17].

[49] See Compl., 4 [#1].

[50] 42 U.S.C. § 405(g).

[51] Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (citing Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981)).

8

reasonable person could find to support the result."[52] Substantial evidence exists only if "'a reasonable mind, reviewing evidence in the record as a whole, could accept it as adequate to support the Commissioner's conclusion.'"[53] Even in the presence of substantial evidence, however, a court may review conclusions of law[54] and invalidate findings of fact that are "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."[55]

B. Analysis

The SSA defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[56] A person qualifies as disabled if

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.[57]

---

[52] Burke v. Astrue, No. 09-11514-JLT, 2010 U.S. Dist. LEXIS 111593, at *12 (D. Mass. Aug. 6, 2010) (quoting Musto v. Halter, 135 F. Supp. 2d 220, 225 (D. Mass. 2001)).

[53] Musto, 135 F. Supp. 2d at 225 (quoting Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal brackets omitted)).

[54] Slessinger v. Sec'y of Health & Human Servs., 835 F.2d 937, 939 (1st Cir. 1987) (citing Thompson v. Harris, 504 F. Supp. 653, 654 (D. Mass. 1980)).

[55] Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (citing Da Rosa v. Sec'y, 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz, 955 F.2d at 769).

[56] 42 U.S.C. § 423(d)(1)(A).

[57] Id. § 423(d)(2)(A).

To determine more specifically whether a person qualifies as disabled, the SSA has created a five-step evaluation process.[58] The ALJ must determine sequentially (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals a listed impairment;[59] (4) whether the claimant can perform past relevant work; and (5) whether any jobs exist in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.[60]

Here, after evaluating each step, the ALJ denied Plaintiff's claim for total disability. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 19, 2007, the alleged onset date.[61] At step two, the ALJ concluded that Plaintiff had severe impairments of degenerative disc disease and major depressive disorder.[62] At step three, the ALJ concluded that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."[63] At step four, the ALJ found that Plaintiff was

---

[58] See 20 C.F.R. § 404.1520; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6–8 (1st Cir. 1982).

[59] The SSA has a list of impairments that it considers disabling per se. See 20 C.F.R. § 404.1520(d).

[60] Id. § 404.1520(a)(4)(i–v). For each of the first four steps, a claimant bears the burden of showing that he is disabled. After the claimant establishes that he can no longer perform his past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in substantial gainful activity. Rohrberg v. Apfel, 26 F. Supp. 2d 303, 306–07 (D. Mass. 1998).

[61] Tr., 24 [#17].

[62] Tr., 24 [#17].

[63] Tr., 25 [17].

"unable to perform any past relevant work."[64] Finally, at step five, the ALJ determined that considering Plaintiff's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."[65] Specifically, the ALJ determined that Plaintiff has the residual functional capacity to perform "light work."[66]

The DRB, however, modified these findings.[67] Namely, as to step four, the DRB found that the claimant could perform "light work except with the ability to sit or stand for 5 minutes every hour, was limited to no more than occasional ramps or stairs, could never climb ladders, roped or scaffold, could occasionally balance, stoop, kneel, crouch or crawl, and was frequently unable to understand, remember and carry out detailed or complex instructions."[68]

Plaintiff makes three arguments. First, because the ALJ improperly rejected evidence regarding Plaintiff without justification that favored Plaintiff's application for benefits, the ALJ's

---

[64] Tr., 28 [#17].

[65] Tr., 28 [#17].

[66] Tr., 28 [#17]. "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Light work" also involves work that requires walking or standing, or sitting most of the time with some pushing or pulling of arm or leg controls, although the weight lifted may be very little. See id. Consequently, the ALJ identified that Plaintiff was able to perform the following jobs that existed in significant numbers in the national and regional economies: counter attendant, assembler of electrical accessories, loader of dies, and sealer of packages. Tr., 29 [#17].

[67] See Tr., 10 [#17].

[68] Tr., 10 [#17]. The DRB also noted that Plaintiff could at least perform two unskilled light and sedentary jobs, assembler of electrical accessories and sealer of packages. Tr., 10 [#17].

11

decision is not supported by substantial evidence.[69] Second, the ALJ and DRB lacked a legally sufficient basis for finding Plaintiff not fully credible, including overlooking Plaintiff's serious limitations of her functional abilities and her complaints with respect to her back condition.[70] Third, the ALJ improperly evaluated Plaintiff's residual functional capacity by only considering a slanted hypothetical posed to the vocational expert, Cathleen Beer.[71]

The First Circuit has stated that decisions cannot be derived by "ignoring evidence."[72] "It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits."[73] Additionally, if an ALJ fails to explicitly indicate the weight given to relevant evidence, or if a reviewing court cannot tell if a piece of expert testimony was rejected or ignored, the case should be remanded.[74]

A "treating source" is a physician with whom a claimant has an ongoing treatment relationship.[75] The Social Security Administration has determined that the opinion of a treating physician is only to be accorded great weight where that opinion is supported by objective

---

[69] See Pl.'s Mem. Supp. Mot. Reverse, 9–14 [#10].

[70] See Pl.'s Mem. Supp. Mot. Reverse, 15–16 [#10].

[71] See Pl.'s Mem. Supp. Mot. Reverse, 16–17 [#10].

[72] Chater, 172 F.3d at 35 (citing Da Rosa, 803 F.2d at 26; Ortiz, 955 F.2d at 769).

[73] Seavey v. Barnhart, 276 F.3d 1, 8 (1st Cir. 2001) (citing Sims v. Apfel, 530 U.S. 103, 110 (2000)).

[74] Nguyen v. Callahan, 997 F. Supp. 179, 182 (D. Mass. 1998).

[75] 20 C.F.R. §§ 404.1502, 416.902.

medical evidence and where it is consistent with the overall weight of the evidence.[76] When an ALJ rejects a treating clinicians' determination, the record must reflect the statutory requirement that the SSA "give good reason in [its] notice of determination or decision for the weight [it] gives the claimant's treating source's opinion."[77]

Based on Plaintiff's arguments, this court holds that the ALJ's findings are not supported by substantial evidence. The record reveals that Plaintiff had a consistent and substantial patient history with her treating physician and social worker. Dr. Green and Mr. Cardona rendered the opinion that Plaintiff was incapacitated by her mental health and unable to engage in full-time, sustained employment.[78] The record is consistent with this general prognosis, including the Commissioner's own acknowledgment of a major depressive disorder, and with medical opinions issued by SSA consulting examiners, particularly those by Dr. Stronach.[79] Despite this record, the ALJ selected to not give "great weight" to Dr. Green's opinion, claiming that he was unable to find treatment records in support of Dr. Green's opinion.[80]

Although the ALJ concluded that Plaintiff's treating physician's findings were without support of additional medical evidence, Dr. Green's ultimate opinion regarding Plaintiff was in

---

[76] See Social Security Ruling 96–2p, 1996 SSR LEXIS 9, at *3–12, Titles II & XVI: Giving Controlling Weight to Treating Source Medical Opinions; see 20 C.F.R. § 416.927(d)(2).

[77] Social Security Ruling 96–2p, 1996 SSR LEXIS 9, at *11.

[78] See supra note 22 and accompanying text.

[79] See supra note 33 and accompanying text (noting a GAF score of 35).

[80] Tr., 28 [#17].

13

fact supported,[81] and in parts, uncontroverted. No medical opinion in the record challenges Dr. Green's ultimate diagnosis of severe depression and an anxiety disorder. The dispute instead appears to revolve around the <u>degree</u> to which Plaintiff's conditions are debilitating. Under such circumstances, the First Circuit has held that an ALJ is not at liberty to ignore medical evidence (like that of Dr. Green's) or to substitute his own views for uncontroverted medical opinion.[82]

The Commissioner argues that even despite Dr. Green's opinion, no medical evidence supports the severity of the Plaintiff's alleged limitations.[83] This argument is unconvincing. First, given that Plaintiff has presented evidence of her functional inability to perform work, the ALJ, as a lay person, is not qualified to interpret raw medical data.[84] Second, Dr. Green's assessment of Plaintiff's limitations is supported by other evidence in the record, namely that offered by Mr. Cardona. While a social worker may not be considered an "acceptable medical source" capable of establishing a medically determinable impairment, social workers "may be used to show the severity of the individual's impairment(s) and how it affects the individuals ability to function."[85] As other courts have noted, although the ALJ "is empowered with the discretion to afford less

---

[81] See infra notes 85–86 and accompanying text.

[82] See Chater, 172 F.3d at 35.

[83] See Def.'s Mem., 12 [#15].

[84] See Manso-Pizzaro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996) (internal citation omitted) ("But when, as now, a claimant has sufficiently put her functional inability to perform her prior work in issue, the ALJ must measure the claimant's capabilities, and 'to make that measurement, an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.'" (quoting Santiago v. Sec'y of Health & Human Servs., 944 F.3d 1, 7 (1st Cir. 1991))).

[85] Social Security Ruling 06-03p at *2, 2006 SSR LEXIS 5, at *5.

than controlling weight, or even no weight, to the opinion of 'other [non-medical] sources,' the ALJ has a duty to address and discuss the opinion."[86] The ALJ admitted to not completely ignoring this source.[87] But the ALJ briefly concluded that he could not find sufficient support to establish the alleged severity of limitations. There was no discussion of the source.[88] The ALJ did not explain <u>why</u> either Mr. Cardona's MRFC Assessment or Dr. Green's opinion were not supported by "objective medical evidence."[89] Insofar as the ALJ asserted that he could not find objective medical evidence underlying Dr. Green's opinion, the basis of Dr. Green's opinion was not clear. Given that Dr. Green was a treating physician, the ALJ therefore should have "recontact[ed] the source for clarification of the reason for his opinion."[90]

---

[86] Saxon v. Astrue, 08-cv-00178 (NAM), 2011 U.S. Dist. LEXIS 21680, at *25 (N.D.N.Y Mar. 4, 2011) (determining that a social worker's observations would be relevant to addressing the intensity and persistence of the plaintiff's symptoms and, for that reason, the ALJ had a duty to address the social worker's opinion and provide an explanation of what weight, if any, is assigned).

[87] See Tr., 28 [#17].

[88] The DRB did, however, actually discuss the MRFC Assessment from 2009 and Dr. Cardona's assessment. Tr., 9 [#17]. In order to downplay the MRFC Assessment, the DRB emphasized, among other things, Plainitff's (short and necessary) daily activities involving taking care of her children as well as Plaintiff's supposedly "only mild psychotropic medications." Tr. 9 [#17]. The only seemingly contrary medical opinions to which the DRB pointed occurred prior to Plaintiff's MFRC Assessment. Tr., 9–10 [#17] (discussing evaluations in 2007 and 2008). The DRB therefore appears to have left unanswered how Mr. Cardona's MRFC Assessment was contradicted by later (and presumably far more relevant) medical evaluations of Plaintiff.

[89] In this sense, this case does not fall into the well-accepted category of First Circuit cases in which it is acceptable for the ALJ to reject a treating physician's opinion where it is both refuted by the rest of the record evidence and not corroborated by clinical studies. See Haidas v. Astrue, No. 08-11274-MLW, 2010 U.S. Dist. LEXIS 32753, at *9 (D. Mass. Mar. 31, 2010) (collecting cases from the First Circuit).

[90] Social Security Ruling 96-5p, 1996 SSR LEXIS 2, at *16–17, Policy Interpretation Ruling Titles II & XVI: Medical Source Opinions on Issues Reserved to the Commissioner; see

Moreover, the ALJ's conclusion concerning Plaintiff's ability to work was based on Ms. Beer's response to the first, incomplete hypothetical, which omitted Plaintiff's significant mental impairments.[91] The ALJ dismissed Ms. Beer's second conclusion that Plaintiff could not engage in any substantial gainful activity because it was based on a diagnosis delivered by Plaintiff's social worker, Mr. Cardona.[92] But, as explained above, the ALJ insufficiently explained its disregard for this diagnosis.

IV. Conclusion

For the foregoing reasons, Plaintiff's Motion to Reverse or Remand the Decision of the Commissioner of Social Security Administration [#9] is ALLOWED IN PART and DENIED IN PART and Defendant's Motion for Order Affirming the Decision of the Commissioner [#14] is DENIED.

AN ORDER HAS ISSUED.

        /s/ Joseph L. Tauro
    United States District Judge

---

Newton v. Apfel, 209 F.3d 448, 456 (5th Cir. 2000) (quoting 20 C.F.R. § 404.1512(e)); Schall v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] sua sponte.").

[91] See Tr., 28–29 [#17].

[92] See Tr., 28–29 [#17].